**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MOHAMED LACHAAB,**

                                    **Plaintiff,**

             **v.**                                                      **1:15-CV-426**
                                                                              **(FJS/DJS)**
**NANCY ZIMPHER, SUNY Chancellor;**
**ROBERT JONES, University at Albany**
**President; and JORGE RODRIGUEZ,**
**Assistant Attorney General,**

                                    **Defendants.**
_____

**APPEARANCES**                                        **OF COUNSEL**

**MOHAMED LACHAAB**
Albany, New York 12206
Plaintiff _pro se_

**OFFICE OF THE NEW YORK**                    **RACHEL M. KISH, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On April 10, 2015, Plaintiff commenced this action against Defendants Nancy Zimpher,

SUNY Chancellor; Robert Jones, University at Albany President; and Jorge Rodriguez, Assistant

Attorney General, pursuant to Title VII of the Civil Rights Act. _See_ Dkt. No. 1. Specifically,

Plaintiff alleged that he was subjected to termination of employment, retaliation, discrimination

from education, intimidation and harassment. _See id._ at 2.

Pending before the Court is Defendants' motion to dismiss based on the following six grounds: (1) Plaintiff failed properly to serve them and that, therefore, the Court does not have personal jurisdiction over them; (2) individual defendants are not liable under Title VII; (3) Title VII is not the proper statutory basis for the causes of action arising from Plaintiff's status as a student; (4) Plaintiff failed to exhaust his administrative remedies; (5) Plaintiff did not plead a valid cause of action against Defendant Rodriguez; and (6) Plaintiff did not allege a cognizable cause of action. *See* Dkt. No. 13-1 at 2.

## II. BACKGROUND

Plaintiff, who is from Tunisia, matriculated at the State University of New York ("SUNY" or "the University") at Albany in August 2009 as a Ph. D. student in economics. *See* Dkt. No. 1; Dkt. No. 1-1; Dkt. No. 13-1.

Plaintiff alleges that, in the fall of 2009, he began to experience discrimination based on his race and religion at the hands of faculty and staff at SUNY Albany. *See* Dkt. No. 1 at 1-24. Furthermore, Plaintiff asserts that from 2009 to 2013, Professor Michael Jerison, Professor Laurence Kranich, Professor Kwan Koo Yun, Professor Terrence Kinal, University administrator John Murphy, University staff George Philip, University staff Dr. Minor Tamra, Associate Dean Professor Pipkin, University President Robert Jones, and Chancellor Nancy Zimpher intimidated, harassed and discriminated against him. *See* Dkt. No. 1 at 1-24.

Specifically, Plaintiff contends that Professor Jerison, Professor Kranich and Professor Yun discriminated against him in his capacity as a graduate economics student by administering uncharacteristically difficult tests, not altering a microeconomics course schedule to accommodate

his teaching schedule, not responding to emails concerning answers to the midterm and final examinations, deliberately holding extra classes during his teaching hours, and unfairly grading exams. *See id.* at 8-10. Plaintiff also claims that Professor Jerison intentionally signed him up to receive emails concerning events that the University Jewish Center sponsored. *See id.* at 23; Dkt. No. 1-1 at 10. Plaintiff asserts that these emails were sent to him to threaten him via "the Jews and Israel" and were in retaliation for his complaints. *See* Dkt. No. 1-1 at 10.

Furthermore, Plaintiff claims that Professor Kinal did not like him because he was from a Muslim country; and, due to his biases, he terminated Plaintiff from his teaching position in the summer of 2011, prior to Plaintiff's start date. *See* Dkt. No. 1 at 13. Plaintiff also alleges that, on October 4, 2010, Professor Kinal insulted and intimidated him by telling him "you came from Africa and I hate your beard." *See id.* at 12.

Finally, Plaintiff asserts that harassment was pervasive throughout SUNY staff and administration. Plaintiff alleges that a lip-synched musical video made for the University's farewell to staff was actually made to intimidate his children. *See* Dkt. No. 1-1 at 21. Further, Plaintiff alleges that University officials intimidated him through emails and university police. *See* Dkt. No. 1 at 6. Plaintiff contends that, when he missed class on May 5, 2011, John Murphy, an administrator, sent University police to his apartment, which intimidated and scared his family. *See id.*

Due to Plaintiff's many complaints concerning SUNY faculty and staff, University administration requested meetings with him to address both his complaints and the complaints that SUNY faculty and staff had made against him. *See* Dkt. No. 1 at 6; Dkt. No. 1-1 at 26. Plaintiff did not attend the meetings and alleges that the meetings were intended to intimidate and harass him.

*See* Dkt. No. 1 at 6.

On October 29, 2013, Plaintiff withdrew from SUNY Albany. *See* Dkt. No. 1-1 at 30. Plaintiff had an outstanding balance due to the University. *See* Dkt. No. 1-1 at 28-33. When Plaintiff did not make the payment following several requests, the University commenced legal action to recover the money owed. *See* Dkt. No. 1-1 at 30, 34. Upon payment of the outstanding balance, the University discontinued the action against him. *See id.*

Plaintiff subsequently filed a complaint with the United States Department of Education's Office for Civil Rights ("OCR") concerning SUNY's alleged discrimination. *See* Dkt. No. 1-2 at 1-63. The OCR made the following findings, which it communicated to Plaintiff in letters dated May 20, 2014, and September 22, 2014.

> (1) The complaints were untimely, as they were filed more than 180 days after the alleged incident, that Plaintiff was targeted and discriminated against by: being told by his professor that an exam would be easy, when it was difficult and he failed; being told that Plaintiff was from Africa and he hated Plaintiff's beard; and having the police sent to his home when he missed classes.
>
> (2) There was insufficient evidence to substantiate Plaintiff's allegation that the University retaliated against him for filing race, national origin, and age discrimination and retaliation complaints, by requiring that he attend mandatory meetings.

*See* Dkt. No. 1-2 at 2-6, 9-12.

Following the OCR's decision, Plaintiff appealed, alleging that the OCR was racist and had discriminated against him. *See* Dkt. No. 1-2 at 13. Plaintiff's appeal was denied on November 19, 2014. *See* Dkt. No. 1-2 at 1. Plaintiff returned to SUNY Albany to resume his studies in January 2015. *See* Dkt. No. 1-1 at 26-27.

# III. DISCUSSION

**A.      Service of the summons and complaint**

It is well-established that, "'[b]efore a . . . court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.'" *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) (quoting *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, 108 S. Ct. 404, 98 L. Ed. 2d 415 (1987)) (other citations omitted).  Rule 4(e) of the Federal Rules of Civil Procedure governs service of process on individuals located within a judicial district.  *See* Fed. R. Civ. P. 4(e).

The Federal Rules of Civil Procedure place the responsibility for proper service of a summons and complaint, as well as the burden of demonstrating proper service, on the plaintiff.  *See* Fed. R. Civ. P. 4(c)(1); *Preston v. New York*, 223 F. Supp. 2d 452, 466 (S.D.N.Y. 2002) (citation omitted).  Absent such a showing, the court has discretion either to dismiss the action without prejudice or to extend the deadline for service "for an appropriate period."  Fed. R. Civ. P. 4(m); *see also* Advisory Committee Notes to Fed. R. Civ. P. 4(m).

A plaintiff can avoid dismissal if he can demonstrate good cause for his failure to effect proper service.  *See* Fed. R. Civ. P. 4(m); *Blessinger v. United States*, 174 F.R.D. 29, 30-31 (E.D.N.Y. 1997).  Courts consider two factors to determine whether good cause exists: "'(1) the reasonableness and diligence of plaintiff's efforts to serve; and (2) the prejudice to defendants from the delay."  *Blessinger*, 174 F.R.D. at 31 (quotation omitted).  Generally courts will only find good cause where the failure to effect timely service was the result of circumstances beyond the plaintiff's control and was not the result of mere "'inadvertence, neglect, mistake or misplaced reliance[.]'" *Beauvoir v. United States Secret Serv.*, 234 F.R.D. 55, 56 (E.D.N.Y. 2006) (quotation omitted); *see*

*also Zankel v. United States*, 921 F.2d 432, 436 (2d Cir. 1990).

Moreover, courts have found that reliance on a process server to effect service is insufficient to merit a finding of good cause or an extension of time for service. *See Micciche v. Kemper Nat'l Servs.*, 560 F. Supp. 2d 204, 209 (E.D.N.Y. 2008) (citation omitted); *Petrucelli v. Bohringer & Ratzinger, GMBH*, 46 F.3d 1298, 1307 (3d Cir. 1995) (citation omitted). Despite these requirements, however, the Second Circuit has held "that district courts have discretion to grant extensions even in the absence of good cause." *Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007).

In order to effect proper service on an individual, Rule 4(e) provides, in pertinent part, that,

> [u]nless federal law provides otherwise, an individual . . . may be served in a judicial district of the United States by:
>
> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
> (A) delivering a copy of the summons and of the complaint to the individual personally;
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

Since this Court is located in the state of New York, service under Rule 4(e) may be effected pursuant to Section 308 of New York Civil Practice Law and Rules, which provides, in pertinent part, that

> [p]ersonal service upon a natural person shall be made by any of the

following methods:

> 1. by delivering the summons within the state to the person to be served; or
> 2. by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business . . . .

N.Y. C.P.L.R. § 308.

"'CPLR 308(2) requires strict compliance and the plaintiff has the burden of proving, by a preponderance of the credible evidence, that service was properly made.'" *Rosario v. NES Med. Servs. of New York, P.C.*, 105 A.D.3d 831, 833 (2d Dep't 2013) (quotation and other citations omitted); *see also Gray-Joseph v. Shuhai Liu*, 90 A.D.3d 988, 989 (2d Dep't 2011) (stating that "[j]urisdiction is not acquired pursuant to CPLR 308(2) unless both the delivery and mailing requirements have been strictly complied with" (citations omitted)).

In the present case, Plaintiff, through a process server, delivered the summons and complaint to the Counselor's Office at University of Albany for Defendant Jones; to SUNY Plaza for Defendant Zimpher and to the New York Attorney General's Office for Defendant Rodriguez. This would appear to satisfy the first element necessary for proper service under CPLR § 308(2). However, there is no indication that the process server mailed the summons and complaint to any of the Defendants either at their actual place of business or their last known residence. Thus, because Plaintiff failed to comply with the requirements for service on a natural person under New York law, the Court finds that he did not properly effect service under Rule 4(e)(1).

Therefore, the Court must determine whether Plaintiff satisfied the requirements of Rule

4(e)(2).  In this case, there is no dispute that Plaintiff did not deliver a copy of the summons and complaint to Defendants personally or leave copies at their dwelling or usual place of abode.  Thus, the Court need only determine whether he "deliver[ed] a copy of [the summons and the complaint] to an agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(e)(2)(C).  The process server delivered a copy of the summons and complaint to an agent for the Chancellor's Office, the State University of New York, and the New York State Attorney's General Office.  However, none of these entities are Defendants in this action.  There is no evidence, nor does Plaintiff claim, that he served an agent whom the individual Defendants had designated as their personal agents for purposes of service of process.  Thus, the Court concludes that Plaintiff did not properly effect service on Defendants pursuant to Rule 4(e)(2).

Finally, Plaintiff has not shown good cause for his failure to effect service on Defendants. Plaintiff asserts only that he relied on a process server who should have known how to effect service on Defendants.  As noted, however, reliance on a process server does not constitute good cause.  *See Micciche*, 560 F. Supp. 2d at 209.  Although even absent good cause, the Court could extend Plaintiff's time to serve his complaint on the named Defendants, the Court will not do so in this case because of several deficiencies with the complaint, which the Court will address *infra*.


**B.      Title VII's application to Plaintiff's claims**

Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin[.]"  42 U.S.C. § 2000e-2(a)(1).  Consequently, the

-8-

existence of an employer-employee relationship is a primary element of Title VII claims.  *See*

*Tadros v. Coleman*, 717 F. Supp. 996, 1002 (S.D.N.Y. 1989), *aff'd*, 898 F.2d 10 (2d Cir. 1990) (*per*

*curiam*).  Although Title VII defines the terms "employer" and "employee," neither definition is

particularly helpful in determining whether an employment relationship exists.  *See id.*  In such

situations, i.e., where a definition is "nominal" or otherwise unhelpful, the court must look outside

the statute for guidance.  *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-23 (1992).

    To analyze whether an employment relationship exists for purposes of Title VII, "courts turn

to common-law principles to analyze the character of an economic relationship 'only in situations

that plausibly approximate an employment relationship.'"  *O'Connor v. Davis*, 126 F.3d 112, 115

(2d Cir. 1997) (quoting *Graves v. Women's Prof'l Rodeo Assoc.*, 907 F.2d 71, 74 (8th Cir. 1990)).

Thus, "a prerequisite to considering whether an individual is [an employee] under common-law

agency principles is that the individual have been hired in the first instance."  *Id.*  In determining

whether a person has been "hired," the Second Circuit looks primarily to "whether [a plaintiff] has

received 'direct or indirect remuneration' from the alleged employer."  *Pietras v. Bd. of Fire*

*Comm'rs of Farmingville Fire Dist.*, 180 F.3d 468, 473 (2d Cir. 1999) (quotation omitted).  "Where

no financial benefit is obtained by the purported employee from the employer, no 'plausible'

employment relationship of any sort can be said to exist because [compensation] . . .' is an essential

condition to the existence of an employer-employee relationship.'"  *O'Connor*, 126 F.3d at 115-16

(quotation and other citations omitted).

    Furthermore, in those situations in which a plaintiff is both a "student" and an "employee,"

courts have looked to the nature of the work that the individual performed, the relationship between

the individual and the educational institution, and the focus of the institution's challenged actions to

determine if the claims the plaintiff asserts are cognizable under Title VII. *See, e.g., Cuddeback v. Florida Bd. of Educ.*, 381 F.3d 1230, 1235 (11th Cir. 2004) (noting that courts generally refuse to treat students as employees under Title VII "where their academic requirements were truly central to the relationship with the institution" (citations omitted)); *Bucklen v. Rensselaer Polytechnic Inst.*, 166 F. Supp. 2d 721, 726 (N.D.N.Y. 2001) (dismissing Title VII claim as the claimed discrimination did not concern the terms of the plaintiff's employment but rather his capacity as a student); *Stilley v. Univ. of Pittsburgh of Commw. Sys. of Higher Educ.*, 968 F. Supp. 252, 261 (W.D. Pa. 1996) (finding that, for purposes of Title VII, "[a]ll issues pertaining to the completion of plaintiff's dissertation relate to plaintiff's role as a student and not as an employee"). Moreover, as this Court noted in *Bucklen*, although there is a "unique dual role of graduate students, as potentially both students and employees, it cannot extend the parameters of Title VII to encompass purely academic decisions, such as the testing and qualification of doctoral students, that have only a tangential effect on one's status as an employee." *Bucklen*, 166 F. Supp. 2d at 725 (footnote omitted).

In this case, Plaintiff signed a teaching position contract on April 7, 2011, to teach a course part-time commencing on July 7, 2011. *See* Dkt. No. 1-1 at 12, 16. The terms of that contract and what amount, if any, he would be paid under that contract are not part of the record before the Court. Nonetheless, because Plaintiff is *pro se* and there is some evidence that Plaintiff was an employee of the State University of New York at Albany insofar as he had a contract to teach a class, the Court will assume that, to the extent that Plaintiff's claims of discrimination relate to his teaching position, i.e., Professor Kinal's alleged wrongful termination of his teaching contract, the

Court finds that such a claim is cognizable under Title VII.[1]

This assumption, however, does not end the Court's inquiry. In his amended complaint, Plaintiff sues three individuals, Nancy Zimpher, Robert Jones, and Jorge Rodriguez. It is well-established that individuals cannot be held liable under Title VII. *See Wrighten v. Glowski*, 232 F.3d 119, 119 (2d Cir. 2000) (*per curiam*) (stating that "individuals are not subject to liability under Title VII" (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995))) Therefore, the Court dismisses Plaintiff's Title VII claim for wrongful termination of his employment against all three individual Defendants with prejudice.[2]

Alternatively, the Court notes that, even had Plaintiff sued the appropriate party for wrongful termination, his claim would fail because Plaintiff did not exhaust his administrative remedies. Filing a timely charge with the Equal Employment Opportunity Commission ("EEOC") is a prerequisite to commencing an action under Title VII. *See Morgan v. New York State Atty. Gen.'s Office*, No. 11 Civ. 9389, 2013 WL 491525, *6 (S.D.N.Y. Feb. 8, 2013) (quotation omitted). To be timely, "the claimant must file his EEOC complaint within 300 days of the alleged discriminatory conduct and, before bringing suit, must receive a 'Notice of Right to Sue' letter from the EEOC." *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (quotation and other citation omitted). Upon receipt of a right-to-sue letter, a plaintiff has 90 days to file an action in federal court. *See* 42 U.S.C. § 2000e-5(f)(1); *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir.

---

[1] The Court notes, however, that the only claim that is arguably cognizable under Title VII is Plaintiff's claim that Professor Kinal wrongfully terminated his teaching contract. Plaintiff's other claims of discrimination clearly relate to his status as a graduate student and, therefore, are not cognizable under Title VII.

[2] Based on the record in this case, it appears that, for purposes of Title VII, Plaintiff's employer was the State University of New York at Albany. That entity is not a party to this case.

1996) (citations omitted).

In his complaint, Plaintiff alleged that, on June 21, 2011, he was wrongfully terminated from his teaching position. *See* Dkt. No. 1 at 13. Therefore, Plaintiff had 300 days, or until April 26, 2012, to file a claim with the EEOC. However, instead of filing a formal charge, Plaintiff merely sent information to the EEOC concerning alleged discrimination. *See* Dkt. No. 14 at 21. In a letter to Plaintiff dated November 25, 2011, the EEOC advised him that, based on the information he had provided, he likely did "not have a sufficient basis for filing a charge of discrimination with the Equal Employment Opportunity Commission (EEOC)." *See id.* Furthermore, the EEOC requested additional information from Plaintiff if he wished to proceed with a formal charge. *See id.* Plaintiff neither sent additional information to the EEOC nor did he file a formal charge of discrimination with the EEOC. *See id.* at 14, 21. Accordingly, based on the record, the Court concludes that Plaintiff failed to exhaust his administrative remedies with respect to his Title VII claim.

Nonetheless, although exhaustion of administrative remedies is an essential element of the Title VII statutory scheme, "[t]he weight of precedent demonstrates that administrative exhaustion is not a *jurisdictional* requirement; rather, it is merely a precondition of suit and, accordingly, it is subject to equitable defenses." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015); *see also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). In this regard, equitable estoppel would apply in a situation where the allegedly discriminating party attempts to prevent the injured party from filing an administrative complaint, such as by concealing the facts underlying the cause of action, or by falsely promising the party's imminent reinstatement. *See Cerbone v. Int'l Ladies Garment Workers' Union*, 768 F.2d 45, 48-50 (2d Cir. 1985).

In this case, there is nothing in the record to support a finding that Plaintiff's employer tried

to prevent him from filing an administrative complaint or falsely promised him reinstatement. Therefore, the Court finds that there is no reason to excuse Plaintiff's failure to exhaust his administrative remedies. Accordingly, for this reason as well, the Court dismisses Plaintiff's Title VII claim with prejudice.

**C.      Sufficiency of Plaintiff's facts to support a viable cause of action**

In light of Plaintiff's *pro se* status, the Court must construe his complaint liberally to determine whether the facts he alleges would support a viable cause of action. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (citation omitted); *Rhodes v. Hoy*, No. 9:05-CV-836, 2007 WL 1343649, *5 (N.D.N.Y. May 5, 2007) (citation omitted). This is especially true when a *pro se* plaintiff uses a Title VII form complaint that "provides no space for a plaintiff to raise related claims that fall outside the scope of employment discrimination." *Sanders-Peay v. New York City Dep't of Educ.*, No. 14-cv-4534, 2014 WL 6473507, *2 n.2 (E.D.N.Y. Nov. 18, 2014) (citation omitted). Viewing his complaint liberally, it appears that Plaintiff may be trying to assert the following causes of action pursuant to 42 U.S.C. § 1983: (1) a civil malicious prosecution claim against Defendant Rodriguez and (2) an equal protection claim against Defendants Zimpher and Jones.

Section 1983 provides the vehicle for a plaintiff to bring a federal cause of action for "deprivations of any rights, privileges or immunities" secured by the Constitution and federal laws.[3]

---

[3] The Court advises Plaintiff that he can only assert a claim under § 1983 against individual defendants in their individual, as opposed to their official, capacities and cannot assert a claim under § 1983 against the State or any State entity for damages because the Eleventh Amendment bars such claims. *See, generally, Quern v. Jordan*, 440 U.S. 332 (1979); *Mullin v. P&R Educ. Servs., Inc.*, 942 F. Supp. 110, 111-12 (E.D.N.Y. 1996) (stating that a plaintiff cannot bring a § 1983 claim against the State of New York because the State has not waived its

(continued...)

42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege "(1) that the challenged conduct was attributable to a person acting under color of state law and (2) that such conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States." *Eagleston v. Guido*, 41 F.3d 865, 876 (2d Cir. 1994) (quotation omitted); *Scaccia v. Stamp*, 700 F. Supp. 2d 219, 235 (N.D.N.Y. 2010), *aff'd*, 447 F. App'x 267 (2d Cir. 2012) (citation omitted). Furthermore, the statute of limitations for § 1983 claims arising in New York is three years. *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (citations omitted). Plaintiff commenced this action by filing his complaint on April 10, 2015. *See* Dkt. No. 1. Therefore, any incident that occurred before **April 10, 2012**, is time-barred and cannot form the basis for his § 1983 claims.

### 1. Civil malicious prosecution claim against Defendant Rodriguez

To prevail on a malicious prosecution claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that the defendant (1) was acting under color of state law, (2) engaged in conduct that was tortious under state law, and (3) that his conduct resulted in a constitutionally cognizable deprivation of liberty. *See Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 116-17 (2d Cir. 2004). To state a claim under New York law for the tort of malicious prosecution, a plaintiff must show the following: "(1) the initiation of an action by the defendant against the plaintiff, (2) begun with malice, (3) without probable cause to believe it can succeed, (4) that ends in failure or, in other words, terminates in favor of the plaintiff." *O'Brien v. Alexander*, 101 F.3d 1479, 1484 (2d Cir.

---

[3](...continued)
sovereign immunity for a § 1983 violation (citations omitted)).

-14-

1996) (citation omitted).

However, when a malicious prosecution claim is based on a civil action, as it is in this case, there is an additional requirement of "special injury," where the plaintiff must show "some interference with plaintiff's person or property . . . by the use of such provisional remedies as arrest, attachment, replevin or injunction, . . ., or other burden imposed on plaintiff beyond the ordinary burden of defending a lawsuit, . . ." *Id.* (internal citations omitted); *see also Belsky v. Lowenthal*, 47 N.Y.2d 820, 820 (1979) (citations omitted) (malicious prosecution claim properly dismissed since no allegation of interference with plaintiff's person or property).

In this case, to the extent that Plaintiff is attempting to allege a civil malicious prosecution claim against Defendant Rodriguez, such a claim fails because Defendant Rodriguez is entitled to absolute immunity from suit. *See Livecchi v. City of Geneva*, No. 14-CV-6326, 2015 WL 1808639, *7 (W.D.N.Y. Apr. 21, 2015) (citing *Spear v. Town of West Hartford*, 771 F. Supp. 521, 526 (D. Conn. 1991) ("[A]bsolute immunity has also been afforded to municipal attorneys who initiate civil actions."), *aff'd*, 954 F.2d 63 (2d Cir. 1992) (Agreeing that absolute immunity extends to "government attorneys who initiate civil suits"), *cert den.*, 506 U.S. 819, 113 S. Ct. 66, 121 L. Ed. 2d 33 (1992)).

Moreover, even if Defendant Rodriguez were not immune from suit, Plaintiff's claim would fail because he has not alleged facts that would support a civil malicious prosecution claim. *See* Dkt. No. 1-1 at 30-35. Plaintiff has alleged no interference with his person or property, nor does he allege any additional burden of defending a lawsuit. *See id.* Instead, Plaintiff alleges only that SUNY Albany filed a lawsuit against him for unpaid tuition and put his name in court; both of which are ordinary occurrences in litigation. *See id.* at 30. Furthermore, Plaintiff acknowledges that

he owed money to SUNY Albany for past due tuition and that, once he made payment, SUNY Albany terminated suit. *See* Dkt. No. 1-1 at 30, 34.

For both of these reasons, the Court finds that, to the extent that Plaintiff's complaint can be construed to assert a civil malicious prosecution claim against Defendant Rodriguez, the Court dismisses such claim with prejudice.[4]

### 2. Equal protection claims

Construing Plaintiff's complaint liberally, it appears that he may be trying to assert a claim for violation of his rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. "The Equal Protection Clause . . . is 'essentially a direction that all persons similarly situated be treated alike.'" *Latrieste Rest. v. Vill. of Port Chester*, 188 F.3d 65, 69 (2d Cir. 1999) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)).

The Second Circuit has held that a plaintiff seeking to prove a violation of the Equal Protection Clause must show the following: "'(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting [*LeClair v. Saunders*, 627 F.2d 606,] 609-10 [(2d Cir. 1980)]) (citation

---

[4] Generally, before dismissing a *pro se* plaintiff's claim, the court would provide him with an opportunity to amend his complaint. However, where as here, amendment would be futile, there is no reason for the Court to provide such an opportunity to Plaintiff. *See Cuoco v. Muritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

omitted). Failure to identify another individual to whom a plaintiff could be compared for equal protection purposes is fatal to an equal protection claim. *See Prestopnik v. Whelan*, 249 F. App'x 210, 213-14 (2d Cir. 2007) (summary order); *King v. New York State Div. of Parole*, 260 F. App'x 375, 380 (2d Cir. 2008) (dismissing the plaintiff's claim because he had "failed to identify a single individual with whom he [could] be compared for Equal Protection purposes").

Furthermore, in a case such as this one, in which the plaintiff is seeking to hold supervisory officials liable, the plaintiff must allege that the supervisor was personally involved in the alleged constitutional deprivation. *See Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001). A supervisory official can be said to be personally involved if that official (1) "participated directly in the alleged constitutional violation"; (2) "after being informed of the violation through a report or appeal, failed to remedy the wrong"; (3) "created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom"; (4) "was grossly negligent in supervising subordinates who committed the wrongful acts"; or (5) "exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that constitutional acts were occurring." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted). In addition "'a plaintiff must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation.'" *Brown v. Suffolk Cnty. Police Dep't*, No. 15-CV-6349, 2016 WL 1446157, *4 (E.D.N.Y. Apr. 11, 2016) (quoting *Raspardo*, 770 F.3d at 116).

With regard to a supervisor's involvement, "[n]umerous courts have held that merely writing a letter of complaint does not provide personal involvement necessary to maintain a § 1983 claim." *Candelaria v. Higley*, No. 04-CV-277A, 2008 WL 478408, *2 (W.D.N.Y. Feb. 19, 2008) (citing

cases).  Therefore, a supervisory official's receipt of a letter complaining about unconstitutional conduct is not sufficient to give rise to personal involvement on the part of the official.  *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997); *Liner v. Goord*, 310 F. Supp. 2d 550, 555 (W.D.N.Y. 2004).  Even "the fact that an official ignored a letter alleging unconstitutional conduct is not enough to establish personal involvement."  *Thomas v. Coombe*, No. 95 Civ. 10342, 1998 WL 391143, *6 (S.D.N.Y. July 13, 1998) (citations omitted).

In his complaint, Plaintiff alleges three incidents that could possibly form the basis for an Equal Protection claim.  Plaintiff alleges that, in the fall of 2009, Professor Kranich deliberately gave extra classes during Plaintiff's teaching hours so that he would miss exam material.  *See* Dkt. No. 1 at 8.  Plaintiff alleges that he asked Professor Kranich to change the time of these classes but he ignored this request.  *See id.*  Second, Plaintiff asserts that, on September 7, 2010, Professor Jerison discriminated against him by administering an unusually difficult test.  *See id.*  Plaintiff further alleges that the September 2010 exam grading solution was changed after he complained.  *See id.* at 11.  Third, Plaintiff contends that, on June 21, 2011, Professor Kinal wrongfully terminated him from his summer teaching position.  *See id.* at 13.  Plaintiff claims that Professor Kinal terminated him due to his racial biases and had stated to Plaintiff, "you came from Africa and I hate your beard."  *See id.*

As noted, the statute of limitations for § 1983 claims is three years.  Thus, even if the Court liberally construed Plaintiff's complaint to assert an Equal Protection claim under § 1983, the three incidents of discrimination on which Plaintiff relies to support such a claim occurred prior to April 10, 2012; and, therefore, to the extent that Plaintiff's Equal Protection claim is based on these incidents, it would be time barred.

Alternatively, even if these incidents had occurred within the required three-year time frame, Plaintiff's claim would fail because he has not alleged that any other student who was similarly situated to him was treated differently.  In fact, to the contrary, although Plaintiff alleged that Professor Jerison discriminated against him by administering an unusually difficult test, Plaintiff asserted that "[m]ost of the 6 students who took the exam were very angry about it," that other students did poorly, and that a second student failed.  *See* Dkt. No. 1-1 at 14.  Plaintiff also stated that he did not pass his spring exams because of his busy teaching schedule and family life.  *See id.* Rather than support his claim of an Equal Protection violation, these assertions demonstrate that he was treated the same as his fellow students.

Furthermore, with respect to Defendant Zimpher and Defendant Jones, both of whom are supervisory officials, Plaintiff has not alleged any facts that would support a finding that they were personally involved in any alleged constitutional deprivation.  Plaintiff alleges only that Defendant Zimpher failed to respond to two emails he sent to her office on November 4, 2011, and May 18, 2012, and ignored Plaintiff's complaint.  *See* Dkt. No. 1-1 at 24-26.  Similarly, Plaintiff alleges that, on October 16, 2013, Defendant Jones ignored an email complaint that Plaintiff sent him about faculty and staff.  *See id.* at 27-28.  These allegations are insufficient to demonstrate that either Defendant Zimpher or Defendant Jones was personally involved in any constitutional deprivation.

For the above-stated reasons, the Court finds that, to the extent that Plaintiff is attempting to state an Equal Protection claim under § 1983, such a claim would be time-barred because all of the incidents about which Plaintiff complains that could plausibly suggest such a claim occurred more than three years before he commenced this action.  Alternatively, Plaintiff has failed to allege any facts that would support a finding that Defendants Zimpher and Jones were personally involved in

any alleged constitutional violation.

## IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that, because Plaintiff did not properly effect service on Defendants pursuant to Rule 4 of the Federal Rules of Civil Procedure, Defendants' motion to dismiss for improper service is **GRANTED** and Plaintiff's complaint is **DISMISSED without prejudice**; and the Court further

**ORDERS** that, because individuals cannot be held liable under Title VII, Defendants' motion to dismiss the Title VII claims against them is **GRANTED with prejudice**;[5] and the Court further

**ORDERS** that, to the extent that Plaintiff's complaint can be construed to allege a claim for civil malicious prosecution pursuant to 42 U.S.C. § 1983 against Defendant Rodriguez, that claim is **DISMISSED with prejudice** because Defendant Rodriguez is entitled to absolute immunity; and the Court further

**ORDERS** that, to the extent that Plaintiff's complaint can be construed to allege Equal Protection claims against Defendants Zimpher and Jones, in their individual or official capacities, those claims are **DISMISSED with prejudice**;[6] and the Court further

_____

[5] The Court notes that it would be futile for the Court to allow Plaintiff to amend his Title VII claims, even if he did so against the appropriate defendant, i.e., his employer, because he did not exhaust his administrative remedies and the time to do so has expired.

[6] The Court notes that it would be futile to allow Plaintiff to amend his § 1983 Equal Protection claims because the incidents on which Plaintiff bases those claims occurred more than

(continued...)

-20-

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 6, 2016
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge

---

[6](...continued)
three years before Plaintiff commenced this action.